UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAULINE PARKS, | ) | Case No. 1:09 CV 0929 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

     Pauline Parks appeals the administrative denial of disability insurance benefits under 42 U.S.C. §405(g) and the denial of supplemental security under 42 U.S.C. §1383(c)(3). Parks maintains that she is disabled primarily due to bilateral carpal tunnel syndrome. An administrative hearing was held on Parks' benefit applications where the testimony from a medical advisor, Dr. Johnson, and a vocational expert, Mr. Barry Brown was received. At that time Parks was a younger individual with limited education, who the ALJ found could perform only a partial range of light work activities. The ALJ found on November 7, 2008, that Parks was not disabled because she retained the ability to perform unskilled light and sedentary jobs which existed in significant numbers in the national and local economies (Tr. 29). This decision became the final decision of the Commissioner following the Appeals Council's denial of review. See 20 C.F.R. §404.981, §416.1481. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

2

In the November 7, 2008 determination the ALJ found that Parks' severe impairments consisted of status post meniscal tear, lumbar narrowing at L2-3, and depression. (Tr. 21). The ALJ found that these impairments, individually or in combination, did not meet or equal a listed impairment, and restricted Parks to light exertion reduced by a limit to 4 hours of being on her feet and not more than three-step tasks, and allowing for occasional kneeling, crouching, climbing stairs and squatting. (Tr. 24). Mr. Brown testified that under these criteria there would be an 80% reduction in the number of light jobs to 2,800 locally, in which 400 jobs as machine operator, 200 jobs as hand packer, and 110 jobs as assembler predominated. (Tr. 613-14).

*I. Parks's Contentions:*

Parks challenges the ALJ's findings with the following three arguments:

1. The ALJ erred in failing to find the additional severe impairment of bilateral carpal tunnel syndrome and to consider it in the assessment of plaintiff's residual functional capacity;

2. The ALJ committed reversible error by failing to give proper consideration and weight to Ms. Parks' treating physicians; and,

3. The ALJ erred in his determination of Ms. Parks' residual functional capacity.

*II. Standard of Review:*

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of

3

evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009) (quoting *Richardson v. Perales*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 506 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Accordingly, the Court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273(6th Cir. 1997); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").


III. Sequential Evaluation Process:

      The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287,

4

2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work."). "At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). Parks had established that she could not perform her past relevant work. Consequently, the burden had shifted onto the Commissioner to demonstrate the existence of types of employment compatible with the individual's disability. See *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d at 771; *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d at 391-92.

*IV. The ALJ did not Err in Excluding alleged Bilateral Carpal Tunnel Syndrome:*

Parks contends that the ALJ erred by not finding her bilateral carpal tunnel syndrome to be a severe impairment. However, Parks cites no support for the existence of this impairment in the

5

record. (See Tr. 152, 236, 281, 285). Parks relies on the reports from her treating physician, Dr. Turkson. However, Dr. Turkson's reports in the record do not list the diagnosis of carpal tunnel syndrome. Instead, Dr. Turkson's diagnoses in 2005 were status post carpal tunnel release, C4-5 and C5-6 disc bulges, and lumbar and thoracic pain. (Tr. 236, 238, 241). The record did show that Parks had carpal tunnel releases performed in 1993 and June 1995 (Tr. 26, 570, 583)). So, it would appear that Parks had suffered carpal tunnel syndrome during 1993 and 1995, but there is no evidence of the impairment of carpal tunnel syndrome since the alleged onset of disability in January 2003. EMG studies of both upper extremities were conducted the prior month during December 2002 and these studies were normal and "showed no evidence of carpal tunnel syndrome, ulnar neuropathy, or cubital tunnel syndrome" (Tr. 152). Simply stated, there is no evidence of carpal tunnel syndrome during the time Parks claims entitlement to disability benefits.

The ALJ relied on the objective evidence as interpreted by the medical advisor, Dr. Johnson ,that the negative findings from Parks' February 2005 EMG study of her left upper extremity (Tr. 250-51), the December 2002 normal EMG studies of both upper extremities (Tr. 152), normal x-ray of her hands, and the results of cervical studies, showed "there's nothing wrong with her" in her upper extremities (Tr. 597-98). The ALJ's decision rejecting alleged bilateral carpal tunnel syndrome was supported by substantial evidence.( See Tr. 21, 22,26, 27-28).[1]

---

[1] Because Parks cannot establish the existence of bilateral carpal tunnel syndrome in this record, the issues of whether the ALJ correctly categorized this impairment as severe or non-severe for purposes of 20 C.F.R. §404.1521 and §416.921 did not arise. Nor is analysis necessary under the rule that:

6

*V. The ALJ Did Not Apply Correct Legal Process in Rejecting Dr. Turkson's Opinion.*

Dr. Turkson opined that Parks cannot lift over 10 pounds, cannot bend, stoop, crawl or reach above shoulder level, cannot perform repetitive movements with her arms and legs, and cannot perform prolonged sitting and standing, (Tr. 236, 238, 241). The ALJ appeared to recognize Dr. Turkson as one of Parks' treating sources and rejected this opinion as inconsistent with the "greater weight of the evidence," as based on unquestioning acceptance of subjective complaints, and that Dr. Turkson was expressing this opinion out of sympathy to assist Parks in obtaining disability (Tr. 28).

Reports of physicians who have treated the applicant over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2); 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This is commonly known as the treating physician rule. See *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source "controlling weight" if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not

---

"[w]hen an ALJ determines that one or more impairments is severe, the ALJ 'must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987).

*Fisk v. Astrue,* 253 Fed.Appx. 580, 583 (6th Cir. Nov. 9, 2007).
There is no non-severe impairment reserved for consideration in Parks' residual functional capacity. Compare 20 C.F.R. §404.1545(e); § 416.945(e).

7

inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2).

When the ALJ does not give the opinion from the treating physician controlling weight, the ALJ must provide "good reasons," and to failure to do so results in reversal. See *Wilson v. Commissioner of Soc. Sec.* 378 F.3d 541, 544 (6th Cir. 2004). This requirement for articulated "good reason" has been long recognized since at least SSR Rulings 96-2p and 96-5p, which require the ALJ to articulate specific legitimate reasons supported by substantial evidence in the record that are sufficiently specific to make clear for subsequent review the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. The ALJ *must* apply the regulatory factors of this section when explaining why the treating source was not accorded controlling weight. See *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. When the ALJ does not give the opinion from a treating physician controlling weight because it is unsupported or inconsistent with other substantial evidence, then the ALJ must "give good reasons" for rejecting the opinion which include consideration of: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole, and; (5) the specialization of the treating source, as mandated under 20 C.F.R. § 404.1527(d)(2)(i)-(5) and §416.927(d)(2)(i)-(5). See *Bowen v. Commissioner of Social Sec.,* 478 F.3d 742, 746-747 (6th Cir. 2007)(citing *Wilson*, 378 F.3d at 544).

8

On the opposite end of the spectrum, the opinion from a non-examining physician should be given little weight "if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985)). As *Bowen* illustrates, only in more unusual situations will failure to follow these requirements be deemed harmless error. To do otherwise would denigrate the rule that "[a]n agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process." *Wilson*, 378 F.3d at 545(quoting *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)).

The ALJ stated only that Dr. Turkson's opinion was inconsistent with the greater weight of the evidence. This could mean the opinion from the medical advisor, Dr. Johnson. [2] But "greater weight" is not what would be considered a "specific, legitimate reason." However, assuming that the ALJ intended to refer to Dr. Johnson's testimony, this simply is a matter where the opinion from a non-examining physician should be given little weight "if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d at 321.

The ALJ's next reason was that Dr. Turkson's opinion was based on unquestioning acceptance of subjective complaints. That conclusion lacks support. Dr. Turkson's opinion was in part based on lumbar and thoracic pain, but he also relied on Parks' medical history and the April

---

[2] Dr. Johnson testified that he believed that the record indicated the abilities to lift 20 pounds occasionally, stand/walk for 30 minute intervals for a total of 2 hours during a workday, perform prolonged sitting, and occaisonal kneeling, crouching, climbing of stairs and squatting. (Tr. 600-03).

9

2005 cervical MRI study indicating multilevel degenerative disc bulging (Tr. 273-75, 277). Dr. Wolfe who had conducted this study believed it indicated cervical radiculitis (Tr. 273). There was a modicum of objective evidence behind Dr. Turkson's opinion, and that opinion was not simply based on sympathy and unquestioning acceptance of subjective complaints.

The ALJ's third reason to reject Dr. Turkson's opinion was that it was based on sympathy. The ALJ provides no citation to the record for support of this conclusion, and there certainly is no support for this conclusion in the record.

Nor did the ALJ give consideration to the mandatory evaluation criteria of length of the treatment relationship and the frequency of examination, extent of the treatment relationship, and the specialization of the treating source.

Based on the ALJ's decision, the court cannot say whether the ALJ's decision was supported by substantial evidence. "Even if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Wilson*, 378 F.3d at 546-47; *Bowen v. Commissioner of Social Sec.,* 478 F.3d at 746; *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009). The Court has the responsibility to review the administrative decision to decide both whether proper legal standards were used and whether there is substantial evidence in the record to support the findings. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)(quoting *Duncan v. Sec'y of Health & Human Services*, 801 F.3d

10

847, 851 (6th Cir. 1986)).

The Commissioner counters with the argument that the ALJ may decline to afford the opinion from a treating physician substantial weight so long as he articulates his reasons. This is clearly incorrect. The ALJ's articulation of reasons which have no support in the record cannot constitute substantial evidence, and this error is compounded when ALJ's articulated reasons fail to address the mandated regulatory criteria from § 404.1527(d)(2)(i)-(5) and §416.927(d)(2)(i)-(5). Although, the ALJ may have articulated several reasons, they may not necessarily meet the requirement to "give good reasons."

Next, the Commissioner questions the validity of Dr. Turkson's opinion with a discourse comparing it to evidence in the record. The Commissioner forgets that it is the ALJ's determination which must "give good reasons." Finally, the Commissioner argues that because the ALJ addressed consistency and supportability, and Dr. Turkson's opinion was unsupported and inconsistent with substantial evidence in the record, the ALJ had a reasonable basis for not giving the doctor's opinion significant weight, and the decision should be upheld. This counter-argument, like the first one, also ignores the ALJ's failure to address the remaining mandated criteria.

There is the matter of harmless error though, a point addressed in *Wilson* and more recently in *Rabbers*. See *Rabbers*, 582 F.3d at 656-67; *Wilson*, 378 F.3d at 544. *Wilson* held that the "good reason" requirement conferred a substantial procedural right, and "'simply because ...

11

there [was] sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand [was] unlikely[,]'  the ALJ's failure to follow the regulation was not harmless." *Rabbers v. Commissioner Social Sec. Admin.*, 582 F.3d at 656 (quoting *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d at 547). *Rabbers* did not alter this holding. Rather, *Rabbers* held that harmless error would apply "outside the context of the reason-giving requirement," such as in the situation before the court where the ALJ failed to rate the "B-criteria" before concluding that the severity of  claimant's mental impairment did not meet or equal the requirements from the Listing of Impairments for disability due to mental impairment. *Id.*, 582 F.3d at  656-57. Accordingly, the Commissioner's discourse on the evidence of record cannot serve as a basis for the conclusion that the error was harmless, since this dispute lies within the context of the reason-giving requirement.

Parks argues that this error requires reversal. However, nothing in *Wilson* or *Bowen* require that the Court depart from the normal procedure of remand for rehearing.  Congress has authorized reversal  under the fourth sentence of 42 U.S.C. §405(g) "with or without remanding the cause for a rehearing."  See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994)(citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989)). The Commissioner's decision may be reversed and benefits awarded without remand for rehearing only when the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. See  *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176;  *Mowery v. Heckler*,  771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983).  However,

12

in all other circumstances, when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under the fourth sentence for rehearing. See *Faucher*, 17 F.3d at 175-76. This in no ways detracts from *Wilson*'s restrictions on the application of "harmless error." It means only that the ALJ's lack of "good reasons" to reject a treating physician's opinion of disability does not mandate that the Court award benefits.

*VI. Residual Functional Capacity:*

Parks' final argument is that the ALJ's determination of light work capability was contrary to Dr. Turkson's opinion to which deference should have been given and contrary to the evidence bilateral carpal tunnel syndrome. Parks argues that the ALJ should have adopted Dr. Turkson's opinion and the vocational expert's testimony in response to this opinion. The vocational expert had testified that there would be no jobs since the jobs which had been identified under a restricted range of light work of machine operator, hand packer, and assembler, all required repetitive arm use, and Dr. Turkson's opinion disallowed that activity (Tr. 236, 238, 241, 615).

Given that this matter must be remanded to correct the ALJ's legal error in addressing the opinions from the treating physician, Dr. Turkson, it becomes premature to scrutinize the vocational issues. It is now irrelevant whether the ALJ had substantial evidence or not since this matter must be remanded for correction.

**VII. Conclusion:**

For the foregoing reasons based on the arguments presented, the record in this matter and

13

applicable law, the undersigned finds that the Commissioner's decision denying disability insurance benefits and supplemental security income resulted from legal error in weighing the opinion from a treating source and consequently must be reversed and remanded under the Fourth sentence of 42 U.S.C. §405(g) for reconsideration of the treating physician's opinion and other matters relative to the fifth step of the sequential evaluation process.

                                                                               s/James S. Gallas     4/28/10
                                                                              United States Magistrate Judge